May it please the court, William Wick of Wachter & Wick, LLP, for the appellant. I want to focus most of my time on what I thought was the district court's most egregious error, and that was the error as a matter of law in holding that the appellant had inquiry notice of the cause of action against the broker, in this case. The resolution of the date of discovery to trigger the running of the statute of limitations is supposed to be a triable issue of fact. In deciding if there is a genuine issue of material fact, the court is to view the record in the light most favorable to appellant. The evidence of appellant is to be believed, and all justifiable inferences are to be drawn in appellant's favor. The court here ruled that just looking at the policy and the September and April early declaration letters, that as a matter of law, the appellant had inquiry notice that the broker. Well, basically what he said was, this was summary judgment, so basically what he said is any trier of fact looking at this, primarily the letter of April 16, 2001, any reasonable trier of fact would conclude, you know, that they were on inquiry notice. In other words, taking, saying that no trial, a reasonable trier of fact would not agree with your position, that this was not inquiry notice. I disagree, Your Honor. Well, it's a pretty, you know, it's a pretty, it cites in, it cites certain underwriters at Lloyd's London versus Superior Court are powering one. Yes. And there's no question that it's pretty clear that it's declining coverage as to the insurer. But this said, we advise Katima that there's no duty to defend because the administrative proceedings do not constitute a claim, and relying on that decision. That decision interpreted comprehensive general liability policies from the 1940s and the 1950s. This was a pollution legal liability policy from 1998. It was not relevant to the question, and the whole basis for the decision that the examiner cited here was the court's decision that back in those days, the carriers didn't anticipate that there would be these administrative agencies. It's unfair, the policyholders didn't pay a premium for it, and therefore, you only get damages if you sue. That rationale doesn't apply to the modern day pollution legal liability policy. And in fact, if you look at the defense that the insurance company ultimately settled on in the mediation, the insurance company itself disagreed with the assertion that it wasn't a claim. The insurance company, and it's in the record. Well, I looked carefully, and I see, you know, it provides for a claim which is defined as, could it surely encompass an administrative agency order to engage in services which result in expenses to clean up. I see that. I mean, the policy is pretty clear on that. But, you know, why wouldn't a reasonable insured, upon receiving this letter, think, maybe I better check with my broker, make sure. Because there's, okay. Because the basis for the declination was so obviously incorrect on its face. Let's sort out the two, the first two declining letters. I mean, then there's a third later on that says, listen, it's not within the period, after which there's an immediate lawsuit. But your problem is we need to address the first two. That's right. The first letter, declining coverage, is on the ground that this is not a suit. Right. That's pretty obviously a dumb letter, because the policy covers suits and claims. I agree with you. The second letter is the one that's potentially troublesome for you. The second letter declines, saying this is not damages within the meaning of the policy, and they rely on the Powerine case. And the Powerine case, I understand, dealing with a general liability policy rather than a specific pollution policy, says that the term damages does not include some sort of an assessment for cleanup costs by an administrative agency. That one's a little tricky, because at that point I worry a little bit that the broker might have made a mistake. So tell me why that was just obviously wrong or why I shouldn't have suspected at that point that my broker made a mistake. Well, because it seems so obvious at the time, based on the Powerine decision, that Powerine was interpreting these old comprehensive general liability policies, and the entire rationale was the meaning of those policies and that the insurers here did not contract and receive premiums to defend anything but a civil lawsuit. And we knew as a matter of fact that here damages isn't defined in the policy, but we knew as a matter of fact in negotiating the policy that we were clearly covering claims. Yeah. Now, let me ask you this. Maybe it's your argument that, well, Powerine was a bit of a surprise. I mean, at the time the policy was purchased, Powerine didn't exist. Exactly. And then you'll note that Powerine 1 came along that we thought was not applicable to our policies. Powerine 2 came along and supported our position, and as the sweat attorneys note, then another court came along and changed that position. And I guess to me that proves our point. If you're going to knock our client out of court on the basis that we definitely should have known that there was a claim against the broker, when the court says so. This is a test. Do you have to have, for the statute of limitations to run, do you have to have proof that it's a valid claim? In other words, do you have to say, I know I'm going to win, or do you just have to know that there's a possibility of a claim? In other words, for the statute of limitations to run, do you have to show, or does the other side have to show that clearly they would have lost? No. And I agree. That's not the standard. I guess what I'm trying to rely on is the inference that you take all of the evidence in our favor. And I think when you do that, it's not that there couldn't be some potential in the abstract that the broker was at fault. But if you require people in the situation of appellant here, to me, you'd be requiring somebody to sue the broker any time a policy was declined. Because to me, it was at that end of the continuum. It was, I agree with your view of the first letter. And my view of the second letter is that it talked about it wasn't a claim, and the insurance policy itself later based its argument at the mediation, virtually all of the 15 pages, on saying, yes, that was a claim. And, in fact, it was made during the pendency of the first policy. And you know what? We're the holders of the second policy. And so that claim that was a claim is not covered. That's the first letter. That's the easy one. No, no, that's the second letter, too. No, the second letter is it's not damages within the meaning of the policy. Am I missing something? That is to say the second letter, the letter on September, excuse me, on April 16th, 2001. If you look at the second letter at the bottom, right before they cite Powreen, or he, right before Ron Tischer, the claims examiner, says, in the instant case the RWQCB has issued coercive administrative cleanup and abatement orders for the remediation of the property. However, but no civil proceeding has been filed in any court. Established case law is recently upheld. In the absence of legal proceedings, it does not owe a duty to indemnify. And, of course, the insurance company itself. But that's just a repeat of the argument made in the first letter. The new argument in the second letter is that this is not damages within the meaning of the policy. Damages to me. Right. And that Powreen case, as I said, dealt with defining damages in a comprehensive general liability policy that was totally different than a pollution legal liability policy. Let me ask you this. What's the gravamen of your argument against the broker that there was professional malpractice? And what are you saying is the malpractice by the broker? It's exactly what the insurance company argued in the mediation. The insurance company argued in the mediation, look, you originally bought a five-year policy that incepted in 1998. Then the insurance broker said that company might go out of business, change policies, and we got a replacement policy that began in 1999. The broker should have made sure when we got that 1999 policy that it covered back to the inception date of the original policy. Because what the insurance company argued successfully at the mediation to reduce its damages was we are only liable for December 1999 under the new policy forward. Did the broker, when he moves from one company to the next, which sounds like a good idea because the first company ends up going insolvent as I understand it. I mean, that part was a good idea. Yes, that's right. When he moves over to the new company, to National, does he say I'm giving you the same coverage beginning on the date of the new policy? Or does he say I'm giving you the same coverage dating from the earlier date of the earlier company? Does he say one way or the other? Well, recall that the broker who is the defendant in the underlying case is the Sweatt and Crawford entity in California, working with the insurance company, the person you're referring to, I think, who's writing these letters back east. But my client was told that they would have the same coverage. I understand that. And I'm asking you, what does same mean? Does same coverage mean scope of coverage? Does it mean also temporarily goes back to the beginning of the first policy? My client assumed that it meant the same scope of coverage that it bought and paid for. It bought and paid for a five-year policy in 1998. Scope in a temporal sense or scope in the sense of what events are covered? Oh, in both. And do you have any evidence in the record that supports that assumption? That that's what was promised? Yes. I think I could find it. Okay. But your argument is your client was told that this new policy goes back in time to the beginning of the first policy. I don't know if my client was told that explicitly or if I could find that explicitly in the record. My client was told the coverage would be identical, so it did not contemplate. And you're suggesting that your client took a reasonable point of view, a reasonable man, that a policy that he's buying on date X covers date X minus all the way two years and so on and so forth? Well, I think when he originally bought the policy beginning at date Y and then later gets substituted in for a policy at date X, he certainly didn't expect that there would be a clever argument that coverage that he would have had under the single policy, if it hadn't been switched, was suddenly denied because the insurance company said, uh-oh, no, that was a claim. We're changing our position now. We agree that the administrative order is a claim, but you know what? It incepted before the new policy, so therefore you're out of luck. And I would submit that the policyholder should not have the burden. He ought to at least be able to present his case at trial. Remember, we're not arguing for the disposition of the case. We just want to have our day in court to be able to argue that if you judge the standard by making the inferences in my client's favor, we were not on inquiry notice that there was malfeasance by the broker, simply by citing a case that applied to comprehensive general liability policies and asserting that it wasn't a claim. Now, are you wanting to argue if this suit goes forward, broker malfeasance, not only in not getting a policy that goes back, predates to the beginning of the first policy, but also in failing to anticipate powering? Are you going to want to argue that if we let this suit go forward? I suspect we would. Well, how can you do that then? You're saying that's the malfeasance, but that was in front of you as of the April 16th, 2001 letter. Oh, I see what you're saying. You're saying should I – I mean, no. I think I'm in a glass house on – I may want to argue that. Whether I'd be able to argue it successfully, I don't know, because the law was evolving. But as soon as you argue that that's professional malfeasance, I think you're stuck on the statute of limitations, because if you're arguing that now, you clearly could argue that as soon as that second letter comes in based on powering. But our argument – I might not be understanding you. Our argument against the broker is the broker's actions at the time the policy switchover occurred and the broker's failure to assure that the coverage – that the insurance company wouldn't make the argument. I understand that argument, but I ask you, are you also going to make the argument about the definition of damages, and you just said yes. Well, I guess – But as soon as you make that argument, that's real trouble for your statute of limitations argument. Right, and that's why – maybe I should retract that. My initial reaction was I don't want to relinquish any arguments if we're able to go back into court. But the – I think we would have a hard time making the argument for the same reason that I don't think it's clear that we should have assumed based on the powering one decision that related to comprehensive general liability policies that the broker had engaged in malfeasance. I think we'd have trouble making that argument against the broker. Okay. Why don't we hear from the other side, and we'll give you a minute to respond. Thank you. Good morning, Your Honors. May it please the Court. My name is Stanley Penikowski, and I represent the appellees Sweatt and Crawford. Your Honors, the district court correctly granted summary judgment in this case because there were no disputed material facts and only one reasonable inference. Your Honors, it is important to look at exactly what the record says in this case. Starting with plaintiff's complaint. On page 2 of the excerpt of record, paragraph 5, the gravamen of plaintiff's complaint against my clients is stated there. Plaintiff says, one, the parties intended that the coverage would apply to these kinds of cleanup costs. Two, that the plaintiff clearly communicated this to Sweatt and Crawford in a letter. Three, that Sweatt and Crawford knew that plaintiff wanted this coverage, however, did not deliver a policy that covered such risks. That, Your Honor, is exactly what is referred to in these initial coverage denials in September 2000 and April 2001. Starting with the September 2000 coverage denial, I understand that, Your Honor, referred to that as an easy one. I would submit, Your Honor, that it's actually an easy case in favor of my client because of the standard under California law. California law is very clear that all you need to have is a reason to suspect that maybe some wrongdoing has occurred. You don't need to know all the facts. You don't need to know all the legal theories. They do not need even to be... But what happens if the denial of coverage by the insurance company is just pretty clearly wrong? Does that mean right then I've got to sue my broker? You're going to get a lot of lawsuits if that's the standard. Your Honor, even in a situation where the coverage denial is clearly wrong, there could still be inquiry notice as a matter of law because California Supreme Court cases... Listen, if we write that opinion, I guarantee you you're going to get a lot of business because there's going to be a lot of lawsuits filed against your client. As soon as you get a coverage denial, boom. There's no excuse for not filing against you because some court later on is going to say, gee, there was some possibility that the broker made a mistake. By the way, there's another malpractice thing that you ought to be aware of. If you get that kind of a decision from us, the other malpractice thing will say we brought it to our lawyers, had them look at it, and they're the ones who told us not to worry about it. Bingo. You're all in the soup. Your Honor, that's a possibility. And in response to Judge Fletcher's question, Your Honor, the California Supreme Court has already written the kinds of opinions you described, for example, in Jolly v. Eli Lilly, 44 Cal 3rd, 1103. In that case, the plaintiff had some reason to suspect that she had been injured by the drug DES that her mother had taken. And at the time, the plaintiff began to suspect she was injured. She didn't know which manufacturer was responsible for the drug her mother ingested and therefore didn't know who to sue. And California law didn't permit her to file a suit then unless she knew a specific manufacturer. Later on, another California Supreme Court case came down saying that you can simply sue the manufacturers who are responsible for a manufacturer of a substantial portion of the drugs. The plaintiff then went ahead and filed suit saying that she couldn't have known that she had a good claim until this later case, Sindel, came down, and the California Supreme Court ruled on summary judgment that her action was time-barred. Because once she had awareness of the facts that gave rise to her claim, even if she wasn't aware of their legal significance, she was on inquiry notice as a matter of law. And even though her claim may not have succeeded under the then-existing law, the California Supreme Court said you still need to bring the case when you're aware of the facts, because we could always change the law and we want to give plaintiffs an incentive to pursue those kinds of cases diligently. And in Gutierrez and Miller, the California Supreme Court similarly held as a matter of law that a plaintiff was time-barred even though they didn't know all of the facts or the legal significance of those facts. Your Honors, returning to the September 26, 2000 denial of coverage, that alone should have put the plaintiff on inquiry notice. And, Your Honor, that was not an obviously wrong denial of coverage. In fact, it was obviously right. What happened there is, in that letter, the insurer was referring to the duty to defend, not the duty to indemnify. And as the policy shows in excerpts of Record 69, the duty to defend extended only to suits seeking damages. And the insurer told the plaintiff that we're not going to defend you because this isn't a suit seeking damages. It also cited the broader language about claims later on in the policy, but it did rely on the suit seeking damages and it cited the Foster Gardner case. That alone put plaintiff on notice as a matter of law, because plaintiff wanted not only indemnity coverage. Is the provision in the policy that says it's only a duty to defend? Your Honor, there is both an indemnity duty and a duty to defend. And where you said affirmatively that this didn't have a duty to defend in this particular instance. Your Honor, on excerpts of Record 69. So I want to know where in the policy is that grounded? Yes, Your Honor. The policy language at excerpts of Record 69. 69. Says that. And I apologize if what I said before wasn't clear. In the policy, paragraph 1A under coverage A, there's both a duty to indemnify and a duty to defend. The September 26, 2000 letter focused on the duty to defend and said that this is not a suit seeking damages. That's the fourth and fifth lines down in that paragraph. Now, plaintiff had, when they tendered for coverage, they also asked the insurance company to provide a defense. That was in plaintiff's March 21, 2000 letter. And that was something that they wanted. When the insurance company came back in September and said, no, we don't have a duty to defend because this isn't a suit seeking damages. By the allegations of plaintiff's own complaint, which we accept is true for purposes of this proceeding. They wanted that kind of coverage. And this put them on inquiry notice that they may not have gotten that kind of coverage. Then, Your Honors, I agree that the April 16, 2001 letter is even more clear. The plaintiff focuses on the word claims. Your Honor, that is a misdirection because the policy language specifically says, we will pay those sums that the insurer becomes legally obligated to pay as damages arising out of claims. The policy does not cover all claims. It covers damages arising out of claims. How about if you go back to the definition of claim? Claim means a request or a demand received by you or the company for money or services, including institution. Including the institution of suit or arbitration proceedings against you seeking damages. That is correct, Your Honor. The word claim in isolation can be read to include more than just suits. But the limiting language here, which was also the limiting language in Powerline and in all these other cases, is the word damages. It says the insurer becomes legally obligated to pay as damages arising out of claims. So it's clear by the plain language of the policy that if it is not the kind of claim where you're legally obligated to pay damages, there's no coverage. This language is indistinguishable from these other cases and the Powerline cases, Your Honor. It doesn't matter that Powerline involved a CGL versus a PLL. The focus was on the kind of language here. And that case cannot be distinguished on essentially the ground that the car that hit me was blue instead of red. What is more, Your Honors, this policy in coverage B, which is on the excerpts of record, page 72, explicitly says under exclusions this insurance does not apply to cleanup costs. It also says on page 70 this insurance does not apply to bodily injury or property damage. So, Your Honor, it is clear throughout this entire policy that the very kinds of costs the plaintiff says in their complaint, that they told my clients we were supposed to get coverage for them, were not covered. The policy alone puts the plaintiff on inquiry notice that that coverage wasn't obtained. The first denial of coverage in September 2000 provides even more notice. And when we get to April 16, 2001, regardless of what arguments the plaintiffs may have thought that they do or don't have on the law, and the question of interpreting the policy is a question of law for the court, regardless of what arguments they think they do or don't have, there is enough information here that they should have suspected that, hey, maybe I didn't get what I paid for. I asked the broker to get me coverage for these cleanup costs. The insurance company has told me twice that I'm not covered, first for defense and second for indemnity, for these kinds of cleanup costs. Maybe the broker did not get me what I asked for. And your honors are correct that you do not need to know that you have a good claim with certainty. You simply need to have a reason to suspect that would prompt you to make a further investigation. There is no other fact that emerged after April 16, 2001, that would have put plaintiff on any more notice to make the kinds of allegations the plaintiff made in its complaint. You know, let me interrupt you for just a moment. You point to exclusions on page 72 of the excerpts of record. It's page 4 of the policy. Exclusions, this insurance does not apply to cleanup costs, but then there are a lot of subheads. Of course, so that doesn't say we don't pay cleanup costs, but that by the time you finish reading that, we don't pay for certain kinds of cleanup costs. You never relied in your denial letters on this exclusion, did you? Your honors, the insurance, I do not recall the insurance company expressly saying that in their denials. Later on in their mediation brief, they referred to this. You are correct that there are certain types of cleanup costs that may be included. I think that it's undisputed that the kinds of cleanup costs that plaintiff is alleging they were seeking the broker to obtain coverage for are cleanup costs that the insurer ultimately said are not covered here by the policy. Did any of the letters that you say triggered the statute of limitations refer to this exclusion? Your honors, I do not, I do not believe. I think the answer is no, but maybe you can find where it is. Your honors, I do not see it in the first denial of coverage letter, and I do not see that specific exclusion referred to in the second denial of coverage letter. But, your honors, that underscores that there was even more information in the policy itself than was provided in the denial of coverage letters that put plaintiff on inquiry notice as a matter of law. The information given in... Your argument then is that I have to look beyond the reason given for denial of coverage, I've got to read the insurance policy myself and figure out there's some ground for exclusion that this very creative insurance company that doesn't like to pay claims could have raised but did not, and that claim that I've never seen raised by the insurance company as a defense, I've got to attribute that as to possible negligence to my broker? Your honors... That's a pretty extreme statement. You really are going to get sued an awful lot. All they're going to do is read the damn policy and sue you. Your honor, that would be within the scope of inquiry notice as California law has defined it. However, your honor, that is not this case. If we completely set aside the issue of the cleanup cost exclusion, there is enough in coverage A that was discussed in the denial letters to put plaintiff on inquiry notice. Again, the insurance company said... That may be, but I have trouble with your argument that this exclusion of cleanup costs helps you out very much. Your honor, you need not accept that argument in order to affirm the summary judgment. That, in addition to some other arguments that we've made in our briefs, go beyond and provide alternative grounds why you could affirm. However, just focusing on the damages language in the policy and in the denial of coverage letters is sufficient, your honors, in order to affirm the summary judgment. Your honors, I would also like to correct some statements that plaintiff made. First, your honors, it is not correct that the insurance company started relying on a different ground and only on a different ground on March 18th, 2003 and through the mediation. It is clear from the March 18th, 2003 coverage denial letter that they're incorporating by reference their previous coverage denials. They also mention those other theories later on in the case. However, your honor, even if the insurance company had changed its theory in March 2003, that doesn't change the fact that in September 2000 and in April 2001, the plaintiff was already on inquiry notice as a matter of law. Your honors, under California law, any reason to suspect some wrongdoing by someone triggers a duty to conduct a reasonable investigation. Here, there's no disputed fact and summary judgment is warranted. Thank you, your honors. The timing is over by four seconds. Good timing. Okay. Response? Let's start out with giving you a minute here. All right. Thank you. I invite you to focus on the insurance company's mediation brief. Of course, insurance companies always have a line in their letters saying, the fact that we have a new position now doesn't negate and we're not waiving our old position. But if you look at the insurance company's mediation brief, you will see it directly conflicts with the insurance company's mediation brief. It conflicts with what the judge held here. That mediation brief filed in the district court? Was it filed? Yes. Was it part of the record that the district judge saw? I don't know. I doubt it. Well, that's because we didn't get a chance. We had no oral argument. We didn't get a chance to appear. That's our whole point. We haven't had a chance to have the judge consider the facts in the case. Well, but this is summary judgment. You had an opportunity to submit whatever you wanted to submit, correct? That's correct. And I don't know if we submitted the mediation brief. In any event, that mediation brief makes clear that property damage is the contamination and the claim made is each regional water quality control board order. So if we were supposed to have had clear notice from the other letters that take a direct contrary view, an insurance company is saying, no, that was a claim and it was damage, you are going to get lawsuits for everybody that has a declination letter, even if it's wildly off base. You've got to sue the broker. Well, they seem to want those lawsuits, and your law firm is going to do pretty well. Okay. Thank you very much, both sides, for your helpful arguments. And Kerching v. Sweatt and Crawford now submitted for decision. Last one on the argument calendar. Last one on the argument calendar, Sarver v. Travel Centers of America.
judges: Fletcher, Paez, Duffy